UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN WAUDBY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON WIRELESS SERVICES, LLC, et al.,<br><br>Defendants. | Civil Action No. 07-470(FLW)<br><br>MEMORANDUM OPINION<br><br>RECEIVED<br>MAY 2 5 2007<br>AT 8:30_____M<br>WILLIAM T. WALSH<br>CLERK |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon") to stay state law claims pending the outcome of proceedings before the FCC on pre-emption issues, and for a stay and referral of a federal law claim to the FCC. Plaintiff John Waudby, individually and on behalf of all others similarly situated, ("Plaintiff") opposes the motion. This case involves Verizon's practice of including in its wireless customer service agreements an early termination fee ("ETF") clause. Verizon charged members of the Plaintiff class an ETF of $175.00 when they cancelled their wireless service at some time after the trial period but before the end of the "service plan" term, regardless of their reasons for cancellation.

The Federal Communications Commission ("FCC") has currently undertaken to determine whether ETFs constitute "rates charged," or are part of a rate structure within the meaning of 47 U.S.C. § 332(c)(3)(A) of the Federal Communications Act ("FCA"). Therefore, Verizon seeks to (1) stay all state law claims asserted by Plaintiff pending the outcome of the ongoing proceeding before the FCC to determine whether such claims are pre-empted by federal

law, and (2) refer Plaintiff's federal law claim, brought under 47 U.S.C. § 201(b), to the FCC and stay the litigation of such claim in the interim. The Court reviewed the written submissions of the parties and conducted oral argument by recorded telephone conference on May 15, 2007. For the reasons that follow, Verizon's Motion to stay state law claims pending the outcome of proceedings before the FCC on pre-emption issues, and for stay and referral of a federal law claim to the FCC is granted.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

A.  **Factual Background and Procedural History**

This class action involves the business acts and practices of Defendant Verizon Wireless Services, LLC, and Cellco Partnership d/b/a Verizon Wireless ("Verizon") of charging Early Termination Fees ("ETF") when customers having Verizon accounts cancel their Verizon service. (See Pl.'s Compl. at ¶¶ 1-2). Verizon requires its customers to enter into a wireless customer service agreement ("Agreement"). Id. at ¶ 9. These Agreements are preprinted standardized forms that are not subject to modification or negotiation. Id. at ¶ 10. Each of Verizon's Agreements includes, as a term and condition of service, a clause that requires subscribers to pay early termination penalties if they seek, for any reason, to terminate service before the expiration of the contract period which is typically one to two years. Id. at ¶ 11. These termination fees are also due if Verizon terminates the Agreement for such reasons as nonpayment by the customer. Id. at ¶ 12.

The fee charged to customers by Verizon for termination of service before the expiration of the contract term is typically $175.00. Id. at ¶ 13. Specifically, the following clause is included in "Verizon Terms and Conditions":

2

> EARLY TERMINATION FEE: If you select any one (1) or two (2) year Calling Plan and cancel Service during your Minimum Term, then you are responsible for a $175.00 Early Termination Fee in addition to all other outstanding charges on your account . . . .

Id. The customer must pay the full fee whether he or she cancels immediately after entering into the contract or one day before the contract period expires. Id. at ¶ 14. The customer must pay the full fee regardless of the reasons for cancellation. Id. at ¶ 15.

The Cellular Telecommunications and Internet Association ("CTIA"), of which Verizon is a member, recently stated the following in a filing to the FCC: "The longer assured commitment under these term contracts enables the carriers *to reduce handset prices* at the inception of the term and to reduce monthly service charges, based on the expectation that initial and ongoing costs can be recouped gradually over time." Id. at ¶ 17.

Plaintiff John Waudby ("Plaintiff") began using Verizon wireless cellular service in 2002. Id. at ¶ 25. Plaintiff upgraded his phone in February 2006, and Verizon required him to sign a new contract. Id. When Plaintiff was unable to use the phone due to repeated dropped calls, he made over 50 calls to Verizon for assistance in resolving the issue. Id. When Plaintiff's service did not improve, he cancelled his subscription. Id. As a result, Verizon charged Plaintiff a $175.00 ETF under the agreement. Id.

On January 26, 2007, Plaintiff, individually and on behalf of all others similarly situated, filed a Class Action Complaint against Verizon. (See Dkt. no. 07-470, entry no. 1). In the Complaint, Plaintiff contends that Verizon disguises a fee to recover equipment costs as a liquidated damages clause, which is an illegal penalty when the damages are readily calculable. Id. Plaintiff asserts that the termination fee is not actually designed to compensate Verizon for

3

any damages arising from the termination, but has the effect and purpose of locking in the subscribers of Verizon and discouraging them from switching to competing services. (Pl.'s Compl. at ¶ 18). Plaintiff further contends that Verizon's ETF discourages competition in the wireless industry because consumers cannot freely shop around for the best wireless service. Id. at ¶ 19.

Specifically, Plaintiff alleged the following Counts against Verizon: Count 1 - violation of § 201 of the Federal Communications Act; Count 2 - violation of New Jersey Consumer Fraud Act; Count 3 - violation of substantially similar consumer fraud statutes of certain states; and Count 4 - declaratory relief pursuant to 28 U.S.C. § 2201. (See Dkt. no. 07-470, entry no. 1). Verizon filed an Answer to Plaintiff's Complaint and Counterclaims on March 23, 2007. (See Dkt. no. 07-470, entry no. 8). Verizon's Counterclaims include breach of contract and unjust enrichment. Id.

As the result of petitions filed by the defendant in Edwards v. SunCom, Case No. 02-CP-26-3539 (Horry County, S.C.) and the CTIA in March 2005, the Federal Communications Commission ("FCC") has undertaken to determine whether ETFs constitute "rates charged," or are part of a rate structure within the meaning of 47 U.S.C. § 332(c)(3)(A) of the FCA and thus whether "any application of state law by a court or other tribunal to invalidate, modify, or condition the use or enforcement of early termination fees based, in whole or in part, upon an assessment of reasonableness, fairness, or cost-basis of the early termination fee, or to prohibit the use of early termination fees as unlawful liquidated damages or penalties, constitutes prohibited rate regulation preempted by Section 332(c)(3)(A)." (Verizon's Br. at 1, 4). The FCC issued formal notices in the Federal Register and has completed the process of receiving

comments and replies from interested parties. Id. at 4. Although no further action has been taken by the FCC since 2005, a March 2007 article in the Telecommunications Report Daily states that FCC Chairman Kevin Martin "hopes the Commission will act in the ETF proceeding in the next few months." (Verizon's Reply Br. at 8-9).

On March 23, 2007, Verizon filed the present Motion to (1) stay all state law claims asserted by Plaintiff pending the outcome of an ongoing proceeding before the FCC to determine whether such claims are pre-empted by federal law, and (2) refer Plaintiff's federal law claim, brought under 47 U.S.C. § 201(b), to the FCC and stay the litigation of such claim in the interim. (See Dkt. no. 07-470, entry no. 9). Verizon asserts that application of the primary jurisdiction doctrine is necessary to provide the Court with the FCC's controlling decision on the preemption and § 201(b) issues, to preserve the strong federal interest in regulatory uniformity, and to avoid wasting judicial and party resources. (Verizon's Br. at 1). Plaintiff filed opposition to Verizon's motion on April 16, 2007 and argues that the FCA does not preempt state claims and that this case is "a simple case of consumer protection violations and allegations of unfair and unjust conduct." (Pl.'s Opp. Br. at 1).

## II. DISCUSSION

Verizon asserts that the FCC has both the expertise and authority delegated by Congress to determine both (1) whether ETFs constitute "rates charged" under § 332(c)(3)(A), such that state law claims are pre-empted, and (2) whether ETFs are "reasonable" or "just" under § 201(b) of the FCA. (Verizon's Br. at 7). Verizon further asserts that the FCC's determination of whether § 332(c)(3)(A) preempts state-law claims will bind this Court. Id. at 10. Verizon argues that the primary jurisdiction doctrine, which applies when a case implicates questions of statutory

5

construction, promotes uniformity in the administration of federal statutes. Id. at 13. Verizon further argues that the primary purpose of the FCA is the establishment of a national regulatory policy for wireless services. Id.

Plaintiff opposes Verizon's motion and contends that because the FCA does not preempt state law consumer protection claims, but rather supplements state law claims with an additional cause of action, preemption is unwarranted. (Pl.'s Opp. Br. at 4). Plaintiff further argues that the primary jurisdiction doctrine is inapplicable because there are no technical issues to be resolved in this case. Id. at 9. Instead, Plaintiff contends that this case is based in statutory fraud and whether the ETF was "unjust or unreasonable" in violation of the FCA, issues that are well within the conventional experience of a court. Id. Plaintiff requests that if the Court defers to the FCC, the remainder of the case, specifically discovery on class certification, should move forward because even if the FCC were to issue a ruling in a timely fashion, the Court can still consider whether the ETF, as a rate, was unjust or unreasonable or whether state law was violated. Id. at 13.

Verizon states in reply that the FCC possesses unique technical expertise relevant to whether ETFs constitute "rates charged" under section 332(c)(3)(A), or are "reasonable" or "just" under section 201(b). (Verizon's Reply Br. at 4). Verizon argues that claims directly challenging the "reasonableness" or "justness" of a carrier's rates or practices under section 201(b) "squarely fall within the FCC's primary jurisdiction." Id. at 9.

### A. Primary Jurisdiction Doctrine

The primary jurisdiction doctrine was developed by the courts to "avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the

6

subject matter of the agency's regulation or from contradictory rulings by the agency and the court." MCI Commc'n Corp. v. AT&T Co., 496 F.2d 214, 221 (3d. Cir. 1974). The doctrine is specifically applicable to "claims properly cognizable in court that contain some issue within the special competence of an administrative agency." Boyes v. Shell Oil Prod. Co., 199 F.3d 1260, 1265 (11th Cir. 2000). The doctrine requires the court to refer such an issue to the agency, staying further proceedings until the parties receive an administrative ruling. Id. (citing Reiter v. Cooper, 507 U.S. 258, 268 (1993)).

"The main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." Id. (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1310 (2d Cir. 1990)); see also White v. Interstate Commerce Comm'n, 989 F.2d 643, 648 (3d Cir. 1993) (noting that pursuant to the primary jurisdiction doctrine "a court should refer to an agency those matters that lie within the agency's expertise or that require a nationally uniform decision"). Courts must balance the advantages of applying the primary jurisdiction doctrine against the potential costs resulting from complications and delay in the administrative proceedings. Nat'l Commc'n Ass'n, Inc. V. AT&T Co., 46 F.3d 220, 223 (2d Cir. 1995) (citing Ricci v. Chicago Mercantile Exch., 409 U.S. 289 (1973)).

Courts have referred matters to the FCC under the primary jurisdiction doctrine. MCI, 496 F.2d at 220-221 (noting that it was appropriate for the district court to defer to the FCC to avoid conflict with the FCC in the resolution of certain issues). The FCC was created to "execute and enforce" the provisions of the FCA. 47 U.S.C. § 151. Accordingly, Congress has delegated to the FCC the authority to interpret ambiguous terms in the FCA and to provide

parties clarification of those terms. See AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 397 (1999) (explaining that "Congress is well aware that the ambiguities . . . in a statute will be resolved by the implementing agency") (citing Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-43 (1984)). The FCA preempts any state regulation of the "rates charged" by any commercial mobile service provider, while allowing state regulation of "terms and conditions." 47 U.S.C. § 332(c)(3)(A). Currently pending before the FCC is the issue as to whether ETFs constitute "rates charged" under section 332(c)(3)(A) such that state law claims are preempted.

Recently, the United States District Court for the Central District of California ruled that a stay was appropriate in a Class Action suit against Defendant Cellco Partnership, d/b/a Verizon Wireless seeking injunctive and restitutionary relief for Defendant's practice of charging ETFs when wireless customers choose to cancel or terminate their service contract because of poor quality service. Gentry v. Cellco P'ship, d/b/a Verizon Wireless, No. CV05-7888(GAF) (C.D. Cal. 2006). The Court held that the FCC's ruling as to whether ETFs are "rates" under the FCA may be dispositive of the plaintiffs' claims. The Court further held that the doctrine of primary jurisdiction applied because (1) issues of FCA interpretation were within the FCC's jurisdiction and competence, (2) the Court would greatly benefit from the FCC's expertise and experience in interpreting whether ETFs are "rates charged" or "terms and conditions," (3) the need for uniformity is acute because lower courts have already reached conflicting conclusions on the question, and (4) any FCC ruling on the issue shall be afforded substantial deference by the Court. (See Verizon's Ex. A, Gentry Memorandum and Order).

**B.     Reasonableness Pursuant to Section 201(b)**

Defendants in the present matter seek referral to the FCC of Plaintiff's federal claim as to

whether ETFs are "reasonable" or "just" under Section 201(b) of the FCA. Pursuant to section 201(b), "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful." 47 U.S.C. § 201(b).

The United States Court of Appeals for the Second Circuit ruled against referral to the FCC in National Communications. 46 F.3d 220. In National Communications, plaintiff brought suit against AT&T under the FCA alleging that in denying it telecommunications services under Contract Tariff No. 54., AT&T had engaged in unreasonable practices in violation of Section 201 and unlawful discrimination in violation of Section 202. Id. at 222. The Court held that the district court erred in referring the matter to the FCC. Id. at 223. Instead, the Court found that (1) there were no technical or policy issues presented that required agency expertise, (2) there was no risk of inconsistent interpretations, and (3) the fair administration of justice weighed substantially against referral. Id.

Specifically, the Second Circuit held that primary jurisdiction did not apply to cases involving the enforcement of a tariff including the threshold question in the case as to whether at the time plaintiff applied, it qualified for Contract Tariff No. 54. Id. However, the Court noted that "statutory reasonableness of a tariff should, of course, be reviewed by an agency because it is an 'abstract quality represented by an area rather than a pinpoint.'" Id. (citing Danna v. Air France, 463 F.2d 407, 410 (2d Cir. 1972)). The Court also held that because the case did not require interpretation of the tariff, there was no risk of substantial inconsistent interpretations. Id. at 224. The Court further recognized that agency decision-making often takes a long time and

the subsequent delay imposes enormous costs on individuals, society and the legal process. Id. at 225.

In another case, plaintiffs brought a class action challenging defendant wireless company's $5 late payment charges, asserting state common law claims for "unlawful liquidated damages" and "unjust enrichment," and claims that the fees were "unjust and unreasonable" under "Section 201(b) of the Communications Act." Kiefer v. Paging Network, Inc., 50 F. Supp. 2d 681, 683 (E.D. Mich. 1999). The Court held that "[a]llowing the FCC to first consider whether Defendants' late payment charges and billing practices are 'reasonable' as required under Section 201(b) of the Communications Act is consistent with the purposes of the primary jurisdiction doctrine." Id. at 684. The Court also held that referral to the FCC would promote uniformity and consistency in its regulation of the telecommunications industry. Id. The Court stayed further proceedings until after the FCC ruled on the reasonableness issue to prevent the Court from interfering with or contradicting any FCC rulings and to allow the Court to address remedy issues left open after the FCC decision. Id. at 686.

### C.    Administration of Justice

Pursuant to Federal Rule of Civil Procedure 1, the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Upon referral of an issue to the FCC, a court can either stay or dismiss an action. See Airtouch Paging of California v. Pacific Bell, No. C-98-2216, 1999 U.S. Dist. LEXIS 16615, at * 25-26 (N.D. Cal. May 1999) (noting that under the doctrine, federal courts can "stay or dismiss actions over which they have jurisdiction pending resolution of some issue within the special competence of an administrative agency"). In Phone-Tel Comme'n, Inc. v. AT&T Corp., 100 F. Supp. 2d 313

(E.D. Pa. 2000), the Court referred certain technical and policy issues to the FCC, but did not dismiss the case. 100 F. Supp. 2d at 321-22.

The Court explained that dismissal of the case would unfairly disadvantage plaintiff by (1) depriving plaintiff of its chosen forum, and (2) preventing plaintiff from receiving class-wide relief. Id. at 322. The Court noted that Congress vested the Court with concurrent jurisdiction over plaintiff's claim, a grant that the doctrine of primary jurisdiction does not alter. Id. "Rather, the doctrine of primary jurisdiction requires only that the court refer certain discrete issues raised in the case, in the first instance, to the appropriate administrative agency." Id. Following a decision by the FCC on those issues, plaintiff was entitled to return to its chosen forum to proceed to final judgment. Id. The Court permitted the plaintiff to seek termination or modification of the stay based upon a change of circumstances, undue delay by the FCC in addressing the referred issues, or for any other equitable or legal reason as was warranted. Id.

### III.  ANALYSIS

#### A.  Stay of State Law Claims

Currently pending before the FCC is the issue of whether ETFs constitute "rates charged" or "terms and conditions" under section 332(c)(3)(A) of the FTA. If the FCC determines that ETFs are "rates," then Plaintiff's state law claims in this matter will be preempted by federal law. Similar to Gentry, the outcome of the FCC's ruling may be dispositive of Plaintiff's claims. Further, if ETFs are found by the FCC to be "rates," then Plaintiff's state law claims would be pre-empted by federal law. Because this issue is currently before the FCC and Plaintiff's state law claims might be preempted depending on the FCC's ruling, the Court finds that a stay of Plaintiff's state law claims is appropriate until the FCC

determines whether ETFs are "rates" or "terms and conditions" and thus whether Plaintiff's state law claims can go forward.

**B.     Referral of the Section 201(b) Claim to the FCC**

Plaintiff argues that the primary jurisdiction doctrine is inapplicable because there are no technical issues to be resolved. (Pl.'s Opp. Br. at 9). Instead, Plaintiff contends that this case is based in statutory fraud and whether the ETF was "unjust or unreasonable" in violation of the FCA which are well within the conventional expertise of the Court. Id. However, as noted in National Communications and Kiefer, "reasonableness" has been consistently determined by the FCC. "Reasonableness" of ETFs is a matter of statutory interpretation and therefore, within the authority and competence of the FCC. Further, there is a significant need for uniformity in this matter. Not only would Verizon's New Jersey competitors be affected by an FCC decision on the "reasonableness" of ETFs, but competitors elsewhere in the country would also be impacted. Therefore, the Court finds that the primary jurisdiction doctrine applies to this matter.

**1.     Expertise and Competence of the FCC**

Unlike the claims presented in National Communications which turned on whether plaintiff qualified for a contract tariff, Plaintiff's claims in this case require a determination of "reasonableness" under the FCA. Although the Court in National Communication overturned the district court's referral to the FCC, it specifically noted that statutory reasonableness, not an issue in that case, should be reviewed by an agency. National Communications, 46 F.3d at 223. Here, statutory reasonableness of ETFs is a central issue of Plaintiff's Section 201(b) claim against Verizon. Therefore, the FCC's expertise and competence in deciding issues of statutory reasonableness weigh in favor of referral of Plaintiff's Section 201(b) claim to the FCC.

Similar to the plaintiff in Kiefer, Plaintiff in the present action is seeking relief pursuant to Section 201(b) of the FCA. Specifically, Plaintiff's claims are based on Verizon's practice of charging ETFs upon cancellation of service contracts. Plaintiff seeks a determination as to whether ETFs are "reasonable" under Section 201(b). Just as in Kiefer, the determination as to whether ETFs are "reasonable" falls within the FCC's authority and expertise granted to the agency by Congress in the FCA. Kiefer, 50 F. Supp. 2d at 684. Both cases involve matters of statutory interpretation which the FCC would be better able to analyze. Further, in both cases, the Courts would benefit from the FCC's expertise and experience. Therefore, similar to Kiefer, referral of Plaintiff's Section 201(b) claim to the FCC would be consistent with the purposes of the primary jurisdiction doctrine.

Plaintiff's action is also similar to that in Kiefer in that in both cases, plaintiffs asserted state common law claims in addition to claims under Section 201(b). Kiefer, 50 F. Supp. 2d at 683. Similarly, Plaintiff in the present action claims that the "reasonableness" issue is within the conventional expertise of the Court and that the case is really one based in statutory fraud. However, just as in Kiefer, allowing the FCC to first determine whether ETFs are "reasonable" under Section 201(b) of the FCA is consistent with the purposes of the primary jurisdiction doctrine. Id. at 684. Referral would allow the FCC, the agency with expertise, to consider the issue of statutory reasonableness and would also promote uniformity and consistency in the FCC's regulation of the telecommunications industry.

**2. Uniformity**

In Gentry, the Court noted that the need for uniformity was acute, partly because several district courts had already addressed the issue before the Court and reached conflicting

13

conclusions. (See Verizon's Ex. A, Gentry Memorandum and Order at 10). Further, the Court in Kiefer, a case with circumstances similar to the present action, held that referral of the "reasonableness" of fees to the FCC would "promote uniformity and consistency in its regulation of the telecommunications industry." Kiefer, 50 F. Supp. 2d at 686. The issues raised in the present action also calls for uniformity. A decision regarding the reasonableness of ETFs pursuant to Section 201(b) of the FCA would affect not only Defendant in this present matter, but also its competitors in New Jersey and elsewhere. Conflicting decisions would result in significant inconsistency in the telecommunications industry with regard to ETFs. Therefore, based on the FCC's expertise in determining statutory reasonableness and the need for uniformity, the Court finds that the primary jurisdiction doctrine applies and supports referral of Plaintiff's Section 201(b) claim to the FCC.

### C.   Stay of the Present Action

Upon referral of an issue to the FCC, the Court can dismiss or stay the present action. The Court finds that similar to Phone-Tel, dismissal of this action would prejudice the Plaintiff class given that federal court was its chosen forum and that the FCC cannot adequately provide Plaintiff with the relief it seeks. Therefore, a stay of Plaintiff's case pending decision by the FCC is more appropriate.

The Court recognizes the potential delay facing Plaintiff following referral of the Section 201(b) claim to the FCC. However, although FCC proceedings can often take a long time, the FCC issued formal notices in the Federal Register and has completed the process of receiving comments and replies from interested parties. (Verizon's Br. at 4). Although no further action has been taken by the FCC since 2005, a March 2007 article in the Telecommunications Report

Daily states that FCC Chairman Kevin Martin "hopes the Commission will act in the ETF proceeding in the next few months." (Verizon's Reply Br. at 8-9).

Similar to Phone-Tel, the Court finds that it is only referring to the FCC a discrete issue regarding the reasonableness of ETFs pursuant to Section 201(b) of the FCA. Following a decision by the FCC on that issue, Plaintiff may return to this Court and proceed to final judgment. Also, Plaintiff may seek termination or modification of the stay based upon a change of circumstances, undue delay by the FCC in addressing the referred issues, or for any other equitable or legal reason as may be warranted.

## III. CONCLUSION

For the reasons expressed here, the Court finds that Plaintiff's state law claims are stayed pending the FCC's ruling as to whether ETFs are "rates" or "terms and conditions" which may result in preemption of these claims. The Court further finds that the primary jurisdiction doctrine applies to the present matter and based on the FCC's expertise in determining statutory "reasonableness" and the need for uniformity in this matter, the doctrine supports the referral of Plaintiff's federal claim pursuant to Section 201(b) to the FCC. The Court will also stay Plaintiff's federal claims pending the outcome of the FCC's examination of this issue. However, Plaintiff reserves the right to seek modification or termination of the stay. Therefore, Verizon's Motion to stay state law claims pending the outcome of proceedings before the FCC on preemption issues, and for a stay and referral of the federal law claim to the FCC is granted.

An appropriate Order accompanies this Memorandum Opinion.

**Dated: May 24, 2007**